UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

Michael Sindram,
        Disabled Veteran/Plaintiff,

v.                                                Civil Action No.06-1952RBW

Michael Kelly,
        Defendant.

\*                  \*                  \*                  \*

## OPPOSITION TO DEFENDANT MICHAEL KELLY'S MOTION TO DISMISS COMPLAINT

    DISABLED VETERAN/PLAINTIFF, Michael Sindram, *pro-se*, in his Opposition to defendant Michael Kelly's motion to dismiss Complaint, states as follows:
    Plaintiff's Supplemental Motion For Temporary Restraining Order And For Related Relief filed December 11, 2006; Motion For Expedited Hearing And Ruling On Motion For Temporary Restraining Order And For Related Relief filed February 3, 2007; and Motion For Judgment On Pleadings And For Related Relief filed April 13, 2007 are adopted and incorporated herein by reference. Defendant Kelly's representation inopposite to truth: "Mr. Sindram is seeking monetary damages as oppose to equitable relief" ("motion to dismiss" p.4, footnote1) is specious in light of equitable relief sought by Plaintiff contained in afore-referenced pleadings filed with this Honorable Court for which defendant Kelly has made no opposition. Relief sought by disabled Veteran to be treated as conceded and should now be granted. Motion to dismiss/for summary judgment is inappropriate where there exists genuine issues of material fact in dispute. Plaintiff's Complaint need not plead law or match facts to every element of a legal theory. Fed. Rules Civ. Proc. Rule 8, 28 U.S.C.A. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.D.C. 2000).
    To establish a violation of ADA's Title III, which prohibits discrimination in public accommodations, Plaintiff must prove that: (1) Plaintiff has a disability; (2) Plaintiff is otherwise qualified for benefit in question; and (3) Plaintiff was excluded from that benefit due to discrimination because of his disability. Americans with Disabilities Act of 1990, § 302(a), 42 U.S.C.A. § 12182(a).
    At no time does defendant Kelly controvert physical and mental disabilities of this disabled Veteran, who has served our country more than most. **Department of Veterans Affairs Rating Decision** of April 18, 2002 (Exhibit 1); **Disability Certificate** of September 18, 2006 **DIAGNOSIS:** *Osteoarthritis both knees* **RESTRICTIONS:** *Limited walking and standing.* (Exhibit 2); **Disability Certificate** of August 17, 2006 *Patient is 100% disabled and cannot perform duties (permanent).* **Physicians Remarks:** *Patient has a spinal condition and is 100% disabled. Cannot sit for periods >1-2 hours.* (Exhibit 3); and **Report of Confidential Social Security Benefit Information** of June 3, 2002 *According to our records, your file indicates that primary diagnosis was organic mental disorders (Code 2940)* with description of *organic mental disorders* as contained in **20 CFR Ch.III, Pt. 404, Subpt. P, App. 1** (Exhibits 4 and 5 respectively) adopted and incorporated herein by reference.

RECEIVED
SEP - 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Plaintiff's **Request For Reasonable Accommodation** of April 13, 2005 (Exhibit 6) adopted and incorporated herein by reference. Plaintiff's **Verification Of Medical Expenses** (Exhibit 7) attested to by Peter Acs, M.D. of VA Medical Center on October 5, 2004 adopted and incorporated herein by reference. At all times hereto defendant Kelly denied Plaintiff's entitlement to afore-referenced reasonable public accommodations by defendant Kelly's arbitrary and capricious abuse of 14 DCMR § 8905.4. Not only did defendant Kelly adamantly fail to reasonably accommodate Plaintiff but also unconstitutionally increased Plaintiff's rent without offsetting out-of-pocket medical expenses as required by law. Defendant Kelly ultimately terminated this indigent disabled Veteran's Section 8 housing voucher. Plaintiff has clearly demonstrated that he is otherwise qualified for this benefit and was subsequently excluded from that benefit due to discrimination because of disabled Veteran's protected categories enumerated below.

Defendant Kelly continues to violate Plaintiff's constitutionally-guaranteed equal rights under the law as contained in 42 U.S.C. § 1981. Disabled Veteran is therefore entitled to maintain his weighty meritorious cause of action against defendant Kelly cognizable under 42 U.S.C. § 1983:

> *Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or District of Columbia, subjects, or causes to be subjected, any citizen of United States or other person within jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by Constitution and laws, shall be liable to party injured in an action at law, suit in equity, or other proper proceeding for redress...*

Defendant Kelly under doctrine of *respondeat superior* in concert with D.C. Housing Authority continues to unlawfully violate with impunity Plaintiff's protected categories cognizable under **District of Columbia Human Rights Act of 1977** of race, national origin, color, source of income, personal appearance, disability, and age.

A. *Existence of a Cause of Action*

A cause of action in monetary damages against individual federal officials for constitutional infringements exists by virtue of **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics**, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and its progeny. Defendant Kelly's wanton and willful rancorous malicious misconduct and total disregard of Plaintiff's constitutionally-guaranteed rights are "in the 'clear absence of jurisdiction'" violating due process requirements, fundamental fairness, equal protection of law, and equal protection under colour of law. **William v. Rappeport**, 699 F.Supp. 501, 506 (D.Md. 1988) quoting from **Stump v. Sparkman**, 435 U.S. 349, 356-7, 98 S.Ct. 1099, 105, 55 L.Ed.2d 331 (1978), *"...immunity was not designed to insulate anyone from all aspects of public accountability."* 409 U.S. at 31.

United States Supreme Court held in **Cannon v. University of Chicago, et al.**, 441 U.S. 677 (1979), *cert. denied* 457 U.S. 121 (1981); *cert. denied* 460 U.S. 1013 (1983) that Petitioner may maintain her lawsuit, despite absence of any express authorization for it in Title IX of Education Amendments of 1972. It follows that beneficiary may sue administrative agency under section

601 to compel termination of funds to achieve end intended by law to cease discriminatory practice of recipient of federal funding. *Id.*, n.3:

> "Mr. COOK. [I]f Federal Government is defendant, and if Federal Government is found guilty of violation of this act, and it is in fact discriminating, then it is conceivable that attorney's fees and costs could go against Federal Government." "Mr. PELL. But can an individual sue Federal Government?" "Mr. COOK. Under this title?" "Mr. PELL. Yes." "Mr. COOK. Oh yes!"

Clearly, **Cannon** indicates legislative intent to create a private remedy. Moreover, **Cannon** implies such a remedy is consistent with underlying purposes of legislative scheme.

In addition to Fifth Circuit in **Bossier Parish School Board v. Lemmon**, 370 F.2d 847, 852 (CA5 1967), *cert. denied*, 388 U.S. 91 at least four other federal circuits explicitly relied on Title VI of Civil Rights Act of 1964 as basis for a cause of action on part of a private victim of discrimination against alleged discriminator. *See* **Blackshear Residents Org. v. Housing Authority of Austin**, 347 F. Supp. 1138, 1146 (WD Tex. 1972); **Hawthorne v. Kenbridge Recreation Assn.**, 341 F. Supp. 1382, 1383-1384 (ED Va. 1972); **Gautreaux v. Chicago Housing Authority**, 265 F. Supp. 582 (ND Ill. 1967); **Lemon v. Bossier Parish School Board**, 240 F. Supp. 709, 713 (WD La. 1965), *aff'd*, 370 F. 2d 847 (CA5 1967). Moreover, in 1969, in **Allen v. State Board of Elections**, 393 U.S. 544, United States Supreme Court had interpreted comparable language in § 5 of Voting Rights Act as sufficient to authorize a private remedy. In fact, Congress enacted Title IX against a backdrop of three issued implied-cause-of-action decisions of United States Supreme Court involving civil rights statutes with language similar to that in Title IX. In all three, a cause of action was found. *See* **Sullivan v. Little Hunting Park**, 396 U.S. 229; **Allen**; **Jones v. Alfred H. Mayer Co.**, 392 U.S. 409. In subsequent cases, United States Supreme Court has continued to give careful attention to claims that a private remedy should be implied in statutes which omit any express remedy. *See* **Santa Clara Pueblo v. Martinez**, 436 U.S. 49; **Piper v. Chris-Craft Industries**, 430 U.S. 1.

Package of statutes of which Title IX is one part also contains a provision whose language and history demonstrate that Congress itself understood Title VI, and thus its companion, Title IX, as creating a private remedy. Section 718 of Education Amendments authorizes federal courts to award attorney's fees to prevailing parties, other than United States, in private actions brought against public educational agencies to enforce Title VI in context of elementary and secondary education. Language of this provision explicitly presumes availability of private suits to enforce Title VI in education context. That assumption was made explicit during legislative debates on § 718.

Very persistence—before 1972 and since, among judges and executive officials, as well as among litigants and their counsel, and even implicit in decisions of United States Supreme Court—of assumption that both Title VI and Title IX created a private right of action for victims of illegal discrimination and absence of legislative action to change that assumption provide further evidence that Congress at least acquiesces in, and apparently affirms, that assumption. United States Supreme Court had no doubt that Congress intended to create Title IX remedies comparable to those available under Title VI and that it understood Title VI as authorizing an implied private cause of action for victims of prohibited discrimination.

Title IX, like its model Title VI, sought to accomplish two related, but nevertheless somewhat different, objectives. First, Congress wanted to avoid use of federal resources to

support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices. Both of these purposes were repeatedly identified in debates on these two statutes.

Award of individual relief to a private litigant who has prosecuted his/her own suit is not only sensible but is also fully consistent with—and in some cases even necessary to—orderly enforcement of statute. As articulated in **_Cannon_** Department of Health, Education, and Welfare, which is charged with responsibility for administering Title IX, perceives no inconsistency between private remedy and public remedy. On the contrary, agency takes unequivocal position that individual remedy will provide effective assistance to achieving statutory purposes.

When Congress intends private litigants to have a cause of action to support their statutory rights, far better course is for it to specify as much when it creates those rights. But United States Supreme Court has long recognized that under certain limited circumstances failure of Congress to do so is not inconsistent with an intent on its part to have a remedy available to persons benefited by its legislation. Title IX presents atypical situation (not unlike ADA) in which all circumstances that United States Supreme Court has previously identified as supportive of an implied remedy are present. United States Supreme Court therefore concludes in **_Cannon_** that Petitioner may maintain her lawsuit, despite absence of any express authorization for it in statute. United States Supreme Court further concludes that even if it cannot be persuasively demonstrated that Title VI created a private right of action, nonetheless this remedy should be inferred in Title IX because prior to its enactment several lower courts had entertained private suits to enforce prohibition on racial discrimination in Title VI. Origin of implied private causes of actions in federal courts is said to date back to Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33 (1916). Recent cases inferring a private right of action to enforce various civil rights statutes relied not merely upon statutory language granting right sought to be enforced, but also upon clear compatibility, despite absence of an explicit legislative mandate, between private enforcement and legislative purpose demonstrated in statute itself. Accordingly, defendant Kelly's motion to dismiss Complaint should now be denied with prejudice. Plaintiff's request for injunctive relief should now be granted.

### B. *Civil Rights*

Private causes of action for benefit of classes protected by them were created by enactment of provisions in Civil Rights Act of 1964 and Rehabilitation Act of 1973 forbidding discrimination in federally funded programs against persons on basis of race, color, national origin or handicapped status; organizations of such persons were therefore entitled to trial on merits of their suit contending that unlawful discrimination would result from planned relocation of medical facility from existing inner city divisions to outlying suburban locations. Civil Rights Act of 1964, §§ 201 *et seq.*, 601 *et seq.*, 701 *et seq.*, 42 U.S.C.A. §§ 2000a *et seq.*, 2000d *et seq.*, 2000e *et seq.*; Rehabilitation Act of 1973, § 504 as amended 29 U.S.C.A. § 794; Fed. Rules Civ. Proc. Rule 23(b)(2), 28 U.S.C.A.; Social Security Act, § 1122, 42 U.S.C.A. § 1320a-1; 5 U.S.C.A. § 706(2)(A, F); U.S.C.A. Const. Amends. 1, 5, 14; Voting Rights Act of 1965, § 2 *et seq.*, 42 U.S.C.A. § 1988; Emergency School Aid Act, § 718, 20 U.S.C.A. § 1617; Education Amendments of 1972, § 901 *et seq.*, 20 U.S.C.A. § 1681 *et seq.*

Court of Appeals, James Hunter, III, Circuit Judge, held that private causes of action for benefit of classes protected by them were created in provisions of Civil Rights Act of 1964 and Rehabilitation Act of 1973 forbidding discrimination in federal programs based on race, color, national origin or handicapped status. **_NAACP v. Medical Center, Inc._**, 599 F.2d 1247, 1255 (3rd

Cir. 1979). In four years since United States Supreme Court decided *Cort v. Ash*, 422 U.S. 66, no less than 20 decisions by Courts of Appeals have implied private actions from federal statutes. *Local 714, Amalgamated Transit Union v. Greater Portland Transit Dist.*, 589 F. 2d 1 (CA1 1978) (§ 13(c) of Urban Mass Transportation Act of 1964); *Bratton v. Shiffrin*, 585 F. 2d 223 (CA7 1978) (§ 1007(a) of Federal Aviation Act of 1958), *cert. granted*, No.78-1398; *Redington v. Touche Ross & Co.*, 592 F. 2d 617 (CA2) (§ 17(a) of Securities Exchange Act of 1934), *cert. granted*, 439 U.S. 979 (1978); *Lodge 1858, AFGE v. Webb*, 188 U.S. App. D.C. 233, 580 F. 2d 496 (§ 203 of National Aeronautics and Space Act of 1958), *cert. denied sub. nom. Government Employees v. Frosch*, 439 U.S. 927 (1978); *Riggle v. California*, 577 F. 2d 579 (CA9 1978) (Rivers and Harbors Appropriation Act); *Lewis v. Transamerica Corp.*, 575 F. 2d 237 (CA9) (§ 206 of Investment Advisers Act of 1940), *cert. granted*, 439 U.S. 952 (1978); *Davis v. Southeastern Community College*, 574 F. 2d 158 (CA4 1978) (§ 504 Rehabilitation Act of 1973), *cert. granted*, 439 U.S. 1065 (1979); *Benjamins v. British European Airways*, 572 F. 2d 913 (CA2 1978) (Art. 28(1) of Warsaw Convention), *cert. denied*, 439 U.S. 1114 (1979); *Abrahamson v. Fleschner*, 568 F. 2d 862 (CA2 1977) (§ 206 of Investment Advisers Act of 1940), *cert. denied*, 436 913 (1978); *Association of Data Processing Service Orgs. v. Federal Home Loan Bank Board*, 568 F. 2d 478 (CA6 1977) (§ 11(e) of Federal Home Loan Bank Act); *Wilson v. First Houston Investment Corp.*, 566 F. 2d 1235 (CA5 1978) (§ 206 of Investment Advisers Act of 1940) *cert. granted*, No.77-1717; *New York Stock Exchange, Inc. v. Bloom*, 183 U.S. App. D.C. 217, 562 F. 2d 736 (1977) (§§ 16 and 21 of Glass-Steagall Act), *cert. denied*, 435 U.S. 942 (1978); *Daniel v. International Brotherhood of Teamsters*, 561 F. 2d 1223 (CA7 1977) (§ 17(a) of Securities Act of 1933), rev'd on other grounds, 439 U.S. 551 (1979); *United Handicapped Federation v. Andre*, 558 F. 2d 413 (CA8 1977) (§ 504 of Rehabilitation Act of 1973); *Nedd v. United Mine Workers*, 556 F. 2d 413 (CA3 1977) (§ 302 of Labor Management Relations Act, 1947), *cert. denied*, 434 U.S. 1013 (1978); *Kipperman v. Academy Life Ins. Co.*, 554 F. 2d 377 (CA9 1977) (39 U.S.C. § 3009); *Kampmeier v. Nyquist*, 553 F. 2d 296 (CA2 1977) (§ 504 of Rehabilitation Act of 1973); Lloyd v. Regional Transportation Authority, 548 F. 2d 1277 (CA7 1977) (same); *McDaniel v. University of Chicago and Argonne*, 548 F. 2d 689 (CA7 1977) (§ 1 of Davis-Bacon Act), *cert. denied*, 434 U.S. 1033 (1978); *Hughes v. Dempsey-Tegeler & Co.*, 534 F. 2d 156 (CA9) (§ 6 of Securities Exchange Act of 1934), *cert. denied*, 429 U.S. 896 (1976).

To imply a private cause of action, the Court must find that such a cause would be consistent with underlying purposes of legislative scheme. A private cause of action under Title VI to seek declaratory and injunctive relief is entirely consistent with legislative scheme. The Court found it impossible in *NAACP* to square plaintiff's peripheral role in section 602 and 603 process with their critical status as protected beneficiaries under section 601, unless section 601 is read to include a right of action distinct from limitations of sections 602 and 603. Very fact that private parties are normally precluded from advancing their section 601 rights before administrative agency makes more compelling implication of a private remedy under Title VI. As United States Supreme Court has noted, when there is a legal right without a legal remedy, that right has little meaning. *Sullivan v. Little Hunting Park*, 396 U.S. 229, 238, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); *Jones v. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

It is also persuasive evidence of intent that Congress has repeatedly enacted attorney's fee legislation implicitly predicated on fact that Title VI may be enforced in a private action. While this legislation does not amount to a conclusive demonstration that a private cause of action exists, fact that Congress has explicitly provided for attorneys' fees under Title VI, coupled with

fact that Congress has had opportunity to foreclose a private action but has not done so supports Court's interpretation of legislative intent and construction of legislative scheme envisaged by enacting Congress.

United States Supreme Court, in *Cannon*, concluded that in 1972 Congress believed that it had created a private right of action under Title VI. The Court concluded that Congress intended that there be a private right of action when it enacted Title VI in 1964. Reasoning of Supreme Court support's Court's conclusion, for post-enactment treatment of Title VI barred it from making any explicit determination as to whether that Title actually created a private cause of action. However, Court's discussion of Title VI indicates to us that were this question before it, answer would be in affirmative. In the same vein, in *University of California Regents v. Bakke*, 438 U.S. 265 (1978), four Justices expressed opinion that there is a private cause of action under Title VI, 438 U.S. at 418, 98 S.Ct. at 2814, while four other Justices assumed that there was a private cause of action without deciding the question, 438 U.S. at 341, 98 S.Ct. at 2745 and 438 U.S. at 327, 98 S.Ct. at 2768.

Holding in *NAACP* that there is a private cause of action under Title VI compels a similar holding in respect to section 504 of Rehabilitation Act of 1973[1], 29 U.S.C. § 794 (1976). Section 504 is virtually identical to Title VI and was consciously intended by Congress to track that statute.[2] More than in case of Title VI, legislative history of Rehabilitation Act Amendments of 1974, Pub. L. 93-516, 88 Stat. 1617, evidences an explicit Congressional intent to create a private cause of action.[3] As stated in Committee Report to Senate, legislature anticipated that a private right of action would be available as a means of enforcing Section 504:

> This approach to implementation of Section 504, which closely follows [Title VI], would ensure administrative due process (right to hearing, right to review), provide for administrative consistency within Federal government as well as relative ease of implementation, and *permit a judicial remedy through a private action.* (Emphasis supplied).

S.Rep.No. 93-1297, 93 Cong., 2d Sess. 39-40, reprinted in 4 U.S. Code Cong. & Admin. News, pp.6373, 6391 (1974).

*NAACP* Court agreed with *Cort* analysis of Section 504 undertaken in *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277, 1284-86 (CA7 1977), in which the court found an

---

[1] Section 504 provides: "No otherwise qualified handicapped individual in United States, as defined in section 706(6) of this title, shall solely by reason of his handicap, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." D.C. Housing Authority under direct control and auspices of defendant Kelly receives substantial Federal financial assistance.

[2] As Senate Labor and Public Welfare Committee noted, "Section 504 was patterned after, and is almost identical to, anti-discrimination language of section 601 [of Title VI]...This section therefore constitutes establishment of a broad government policy that programs receiving Federal financial assistance shall be operated without discrimination on basis of handicap." S.Rep.No. 93-1297, 93 Cong. 2d Sess. 39-40, reprinted in 4 U.S. Code Cong. & Admin. News, pp. 6373, 6390 (1974).

[3] 1974 Amendments were enacted to clarify 1973 Act, and should be accorded great weight when interpreting Congressional intent. See *Red Lion Broadcasting Co. v. FTC*, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). It should be noted fact that Congress intentionally modeled Section 504 after Title VI and fact that its history shows an explicit intent to include a private cause of action strengthens *NAACP* Court's conclusion that a private cause of action was contemplated as a natural part of Title VI as well.

explicit congressional intent to create a private action and concluded that such an action was consistent with underlying purposes of legislative scheme. This Court relied on ***Llyod*** in ***Gurmankin v. Costanzo***, 556 F.2d 184 (CA3 1977), when it supported, in dicta, holding ***NAACP*** Court made and reached same conclusion, without discussion, in ***Doe v. Colautti***, 592 F.2d 704 at 708 n.8 (CA3 1979), *amended* (Feb. 23, 1979).

***NAACP*** Court held under principles enunciated in ***Cort v. Ash***, 422 U.S.66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a private cause of action is implicit in Section 601 of Title VI and Section 504 of Rehabilitation Act of 1973 for plaintiffs who seek declaratory and injunctive relief. Because ***NAACP*** Court found that both statutes do create private causes of action for benefit of classes protected by these respective statutes, and because ***NAACP*** Court found that these plaintiffs had not had an opportunity to try their cause in federal court, ***NAACP*** Court remanded case to district court for a trial on the merit of plaintiffs' Section 601 and Section 504 claims against Wilmington Medical Center. That should be the same holding of this Honorable Court against defendant(s) Kelly and D.C. Housing Authority. The Fourth Circuit has recognized an ***"indisputable desire that those litigants with meritorious claims should not be tripped up in court on technical niceties." Beaudett v. City of Hampton***, 755 F.2d 1277-78 (citing ***Gordon v. Leeke***, 574 F.2d 147 (4th Cir. 1978)).

### C. *Conclusion*

A unanimous United States Supreme Court has admonished that *pro se* in forma pauperis Complaints must be read with tolerance: Dismissal is impermissible unless the court can say "with assurance that under allegations of *pro se* Complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ***Haines v. Kerner***, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957), reaffirmed in ***Estelle***, 429 U.S. at 106, 97 S.Ct. at 292.

Moreover, Complaints need not plead law or match facts to every element of a legal theory. Fed. Rules Civ. Proc. Rule 8, 28 U.S.C.A. Handicapped status, *et al.*, of discrimination Plaintiff/disabled Veteran need not set forth elements of a prima facie case at initial pleading stage, but, rather, because disability discrimination in housing is a claim upon which relief can be granted, "I was turned down for housing because of my disability" is all a Complaint has to say to survive a motion to dismiss for failure to state a claim. 42 U.S.C.A. § 1981; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e *et seq.*; Fed. Rules Civ. Proc. Rules 8, 12(b)(6), 28 U.S.C.A.

WHEREFORE, good cause having been shown and premises carefully considered, Order should now pass:

1. Denying with prejudice defendant Michael Kelly's motion to dismiss Complaint;
2. Granting Supplemental Motion For Temporary Restraining Order And For Related relief;
3. Granting Motion For Expedited Hearing And Ruling On Motion For Temporary Restraining Order And For Related relief;
4. Granting Motion For Judgment On Pleadings And For related Relief;
5. Granting Plaintiff's request for appointment of counsel;
6. Adding defendant party District of Columbia Housing Authority;

7. Such other and further relief as to this Court appears just and proper.

**In God we trust:**

*Michael Sindram*
Michael Sindram, *Disabled Veteran/Plaintiff*
6645 Georgia Avenue, N.W. #306
Washington, D.C. 20012
(202)722-6281

## RENEWAL FOR EXPEDITED HEARING AND JURY DEMAND

Renewal for expedited hearing as required by Fed. R. Civ. P. 65 and jury demand as constitutionally-guaranteed in United States Constitution Amendment 7 to be advanced on Court's calendar to earliest practicable date to aid in the decisional process. Indeed, justice delayed is "just-ice" denied!

*Michael Sindram*
Michael Sindram

## CERITIFICATE OF SERVICE

I HEREBY CERTIFY that copy of foregoing Opposition to defendant Michael Kelly's motion to dismiss Complaint was mailed, postage prepaid, this 6th day of September, 2007 to: Frederick A. Douglas, Esq., 1850 M Street, N.W., Suite 640, Washington, D.C. 20036.

*Michael Sindram*
Michael Sindram

*Wise men have also said these things: It is wrong for a judge be prejudiced. If he pronounces a guilty person innocent, he will be cursed and hated by everyone. Judges who punish the guilty, however, will be prosperous and enjoy a good reputation.*
**Proverbs 24:23-25 (TEV)**

*Make it **your** aim to do what is **right**, not what is evil, so that **you** may live. Hate what is evil, love what is **right**, and see that justice prevails in the courts…let justice flow like a stream, and righteousness like a river that never goes dry.*
**Amos 5:14a, 15a, 24 (TEV)**

*Do for others what **you** want them to do for **you**!*
**Matthew 7:12a (TEV)**

| Rating Decision | Department of Veterans Affairs<br>Huntington Regional Office | | Page 1 |
|---|---|---|---|
| | | | 04/18/2002 |
| NAME OF VETERAN<br>MICHAEL J. SINDRAM | VA FILE NUMBER | SOCIAL SECURITY NR | POA<br>None |

## ISSUE:

1. Evaluation of right knee chondromalacia with torn medial/collateral meniscus currently evaluated as 30 percent disabling.
2. Service connection for arthritis, right knee
3. Service connection for hip, left knee debridement, head, neck, fingers, hand, arm and right calf as secondary to the service-connected disability of right knee chondromalacia with torn medial/collateral meniscus.
4. Entitlement to individual unemployability.

## EVIDENCE:

A letter was sent to the veteran requesting additional evidence or information he may have in support of his claim.
VA examination dated 04-28-00 and 06-25-01
Outpatient treatment reports from VAMC Washington D. C. dated 03-27-00 to 05-01-01

## DECISION:

1. Evaluation of right knee chondromalacia with torn medial/collateral meniscus, which is currently 30 percent disabling, is continued.
2. Service connection for arthritis, right knee is granted with a 10 percent evaluation effective 10-26-99.
3. Service connection for hip, left knee debridement, head, neck, fingers, hand, arm and right calf is denied.
4. Entitlement to individual unemployability is denied.

## REASONS AND BASES:

1. The evaluation of right knee chondromalacia with torn medial/collateral meniscus is continued as 30 percent disabling. An evaluation of 30 percent is granted for recurrent subluxation or lateral instability of the knee which is severe.

Outpatient treatment reports from VAMC Washington D. C. dated 03-27-00 to 05-01-01, nor the VA examination dated 04-28-00 and 06-25-01 offer any evidence to justify an increased evaluation. It is further noted on the x-ray report of June 27, 2001 that there was no significant changes since the x-ray of 11/2/99. Therefore, a continued 30 percent disability evaluation is warranted.

2. We are granting service connection for arthritis of the right knee because x-ray evidence in the VAMC records show arthritis as of October 26,1999. The VA examination is noting the range of motion as active flexion as 20 degrees, extension 10 degrees less than 0. Service connection for arthritis, right knee has been established as directly related to military service. This condition is evaluated as 10 percent disabling from October 26, 1999 because this is the date first shown by x-ray evidence. A 10 percent evaluation is



| Rating Decision | Department of Veterans Affairs<br>Huntington Regional Office | | Page 2 |
|---|---|---|---|
| | | | 04/18/2002 |
| NAME OF VETERAN<br>MICHAEL J. SINDRAM | VA FILE NUMBER | SOCIAL SECURITY NR | POA<br>None |

assigned for painful or limited motion of a major joint or group of minor joints, and may also be applied once to multiple joints if there is no limited or painful motion. A higher evaluation is not warranted unless extension is limited to 15 degrees or flexion is limited to 30 degrees.

3. Service connection may be granted for a disease or injury which resulted from a service-connected disability or was aggravated thereby. The evidence does not show that hip, left knee debridement, head, neck, fingers, hand, arm and right calf is related to the service-connected condition of right knee chondromalacia with torn medial/collateral meniscus, nor is there any evidence of this disability during military service.

Outpatient treatment reports from VAMC Washington D. C. dated 03-27-00 to 05-01-01 nor the VA examination dated 04-28-00 and 06-25-01 provide evidence or an opinion that the claimed disabilities are related to or a result of the service connected disabilitiy of the right knee chondromalacia. It is also noted in previous records the veteran has a hip injury, post surgical that resulted from a trauma when the veteran was 10 years old. There is no evidence to support service connection directly related to military service or as a secondary condition to the right knee.

4. Entitlement to individual unemployability is denied because the claimant has not been found unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. Service-connected disabilities currently evaluated as 30 percent do not meet the schedular requirements for entitlement to individual unemployability. 38 CFR 4.16 provides that individual unemployability may be granted where there is one disability evaluated as 60 percent disabling, or two or more disabilities, one of which is 40 percent with a combined evaluation of 70 percent or more. These percentage standards are set aside only in exceptional cases where there is an unusual factor of disability rendering the veteran unable to secure or follow a substantially gainful occupation. Such cases are submitted to the Director of the Compensation and Pension Service for extra-schedular consideration. This case has not been submitted for extra-schedular consideration because there are no exceptional factors or circumstances associated with the veteran's disablement.

The veteran is currently service connected for a right knee condition that is evaluated as 30 percent disabling. It is noted in the VAMC records he does have other disabilities that are not service connected.

A letter was sent on December 11, 2001, to the veteran requesting additional evidence or information he may have in support of his claim. There has been no reponse to the letter to date. Therefore, entitlement to individual unemployability is denied.